**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

BRENDA A. PATTERSON,

       *Plaintiff*,

    v.

SCOTT S. HARRIS, *et al.*,

       *Defendants.*

Civil Action No. 21-3339 (RDM)

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Brenda A. Patterson, proceeding *pro se*, filed this action on December 17, 2021, against the Clerk of the Supreme Court of the United States, the United States Department of Justice ("DOJ"), the President of the United States, the Attorney General of the United States, the Assistant Attorney General for the Civil Rights Division of the Department of Justice, the governor of Florida, several Florida state employees, Miami-Dade County and its mayor, and the Chief Judge and Clerk of this Court.  Dkt. 1 (Compl.); Dkt. 6 (Am. Compl.).  Although the relationship between these various parties is not obvious, Plaintiff's claims arise from the arrest and incarceration of her son, Dimitri Patterson, and subsequent efforts by Plaintiff to petition the Department of Justice, the Supreme Court, and this Court on her son's behalf.  Dkt. 6 (Am. Compl.).  She seeks a judgment of $400 million in actual damages; "injunctive relief ordering the DOJ to investigate and intervene on behalf of the Plaintiff;" and a permanent injunction "enjoining and restraining the . . . Clerk [of the Supreme Court] from refusing to file and Docket the Petition."  *Id.* at 69 (Am. Compl. ¶¶ 668–69).

Now before the Court are motions to dismiss by Miami-Dade County and its mayor, Dkt. 17; the Florida government officials and state agency ("the Florida defendants"), Dkt. 12; and the

Department of Justice, federal government employees, and federal judicial defendants ("the Federal Defendants"), Dkt. 37.  For the reasons that follow, the Court will **GRANT** Defendants' motions to dismiss.

## I.  BACKGROUND

Each of Plaintiff's claims arise from the arrest, detention, and prosecution of her son, Dimitri Patterson, and her efforts to file civil-rights complaints, lawsuits, and petitions on his behalf.  According to Plaintiff's amended complaint (hereinafter, "complaint"), Dimitri Patterson was first arrested in May 2018 by several United States Marshals and Orange County police officers, allegedly "absent probable cause and a certified warrant."  Dkt. 6 at 4 (Am. Compl. ¶ 15).  Plaintiff alleges that her son "has never been charged with a crime by the State of Florida" but that he was held following his initial arrest at the Orange County jail and a correctional facility in Miami, Florida.  *Id.* at 5 (Am. Compl. ¶ 20).  She further alleges that her son was again arrested by Orange County police officers in October 2018, *id.* at 5 (Am. Compl. ¶ 22), after which he was detained in a series of facilities, including the Orange County jail, the Turner Guilford Knight Correctional Center (TGK), the South Florida Evaluation and Treatment Center, and a Miami-Dade County detention center, where he is "currently being unlawfully detained." *Id.* at 5 (Am. Compl. ¶¶ 22–23, 26–27).  Plaintiff alleges that Florida state Judge Alberto Milian, Miami-Dade County, criminal defense attorney Jean-Michel D'Escoubet, and the Office of Criminal Conflict and Civil Regional Counsel are "currently engaging in a criminal conspiracy . . . against [Mr. Patterson], by purporting to preside over" and take part in a "fake [c]ase" against him.  *Id.* at 13 (Am. Compl. ¶ 87).

Plaintiff has filed a series of complaints and petitions with the Department of Justice, the United States Supreme Court, and this Court relating to her son's prosecution and detention in

Florida.  Those filings began with a November 2017 civil-rights complaint that she submitted to the Department of Justice, which allegedly detailed "conspiracies to deprive [Mr. Patterson] of his constitutional rights by Miami-Dade County and its Officers." *Id.* at 3 (Am. Compl. ¶ 13). According to the complaint, the Civil Rights Division of the Department of Justice responded to Plaintiff's complaint in June 2018, expressing the Division's position that her "complaint does not involve prosecutable violations of federal criminal civil rights statutes" and that "this is not the type of case that [the] office prosecutes." *Id.* at 4 (Am. Compl. ¶ 17).  Plaintiff allegedly filed a second civil-rights complaint with the Department of Justice in June 2021, this time via the "DOJ Online Portal." *Id.* at 5 (Am. Compl. ¶ 25).  The DOJ allegedly failed to respond to that second complaint, aside from suggesting in November 2021 that she "may want to contact the FBI" and that "the DOJ does not have the resources to follow-up on or reply to every letter." *Id.* at 5–6 (Am. Compl. ¶¶ 28–29).

Beyond her complaints to the Department of Justice, Plaintiff alleges that she has filed several petitions with the Supreme Court of the United States on her son's behalf. *Id.* at 6–8 (Am. Compl. ¶¶ 30–48).  Plaintiff also allegedly sent President Trump a letter in September 2019, detailing "the deliberate indifference by the DOJ, obstruction by the SCOTUS Clerk, and Officers of the State of Florida conspiring to deprive [Mr. Patterson] of his civil rights," *id.* at 8 (Am. Compl. ¶ 53), and she allegedly sent a similar letter to President Biden in April 2021, *id.* at 10 (Am. Compl. ¶¶ 73–74).

Plaintiff and her son have filed actions similar to this one in two other federal district courts, both of which have dismissed their claims. *See Patterson v. Orlando-Orange Cnty.*, No. 18-cv-950, 2018 WL 6249790 (M.D. Fla. Nov. 29, 2018); Omnibus Order, *Patterson v. Orange Cnty.*, No. 19-cv-21960 (S.D. Fla. May 18, 2020), ECF No. 111.  Plaintiff has also filed two

3

related lawsuits in this Court, *see* Amended Complaint, *Patterson v. Fla. Dep't of Child. & Fams.*, No. 21-cv-1427, 2021 WL 6196991 (D.D.C. Dec. 30, 2021), ECF No. 3; Complaint, *Patterson v. Harris*, No. 22-cv-697, 2022 WL 16758554 (D.D.C. Nov. 8, 2022), ECF No. 1, one of which she contends was stalled by the Clerk of this Court's failure to docket her petitions for default judgment, *see* Dkt. 6 at 18–19 (Am. Compl. ¶¶ 138–49).  In considering those cases, this Court has ruled on many of the same questions it addresses today.  *See Patterson*, No. 21-cv-1427, 2021 WL 6196991; *Patterson*, No. 22-cv-697, 2022 WL 16758554.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Because "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), they have "an affirmative obligation to consider whether the constitutional and statutory authority exist for [them] to hear each dispute" brought before them, *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scies.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  If the "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"[D]efect[s] of standing" constitute "defect[s] in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  The "plaintiff bears the burden of . . . establishing the elements of standing," and each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  Accordingly,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of standing] that is plausible on its face." *Id.* (quotation marks omitted) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, [will] not suffice," *id.* (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678), and the Court need not "assume the truth of legal conclusions" nor must it "accept inferences that are unsupported by the facts set out in the complaint," *id.* (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

## B.    Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a basis for exercising personal jurisdiction over each defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To do so, the plaintiff must "make a *prima facie* showing of the pertinent jurisdictional facts," *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988), meaning that the plaintiff must "allege specific acts connecting [each] defendant with the forum," *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012) (quotation marks omitted).  "Mere conclusions or 'bare allegation[s]'" of jurisdiction are insufficient. *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 186 (D.D.C. 2017) (alteration in original) (citation omitted).

"When deciding personal jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in favor of the plaintiff.'"  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).  That does not require the Court to "accept inferences drawn by [a] plaintiff[] if such

inferences are unsupported by the facts," however. *Id.* (quoting same). Ultimately, the Court must "satisfy itself that it has jurisdiction to hear the suit," and "may look beyond the allegations of the complaint" to do so. *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 173 (D.D.C. 2016).

## C.    Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint. In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 678). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is . . . unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Id.* at 555–56 (citations and quotation marks omitted).

Complaints by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, even a *pro se* litigant must comply with the Federal Rules of Civil Procedure. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Accordingly, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted," as required by Rule 12(b)(6). *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (quotation marks omitted and alteration in original).

### III.  ANALYSIS

**A.  Florida Defendants**

Miami-Dade County and its mayor, Danielle Levine Cava, move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Dkt. 17, as do each of the Florida defendants, Dkt. 11.  Personal jurisdiction is, of course, a prerequisite to suit; except under rare circumstances not present here, "a federal court . . . may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties."  *Sinochem Int'l Co. v. Malay. Int'l Shipping Co.*, 549 U.S. 422, 430–31 (2007).  On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant[s]," *Crane*, 894 F.2d at 456, by asserting either general jurisdiction—which "extends to any and all claims brought against a defendant"— or specific jurisdiction—which requires that "[t]he plaintiff's claims . . . arise out of or relate to the defendant's contacts with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (quotation marks omitted).  Plaintiff has not carried that burden here with respect to either form of personal jurisdiction, even accounting for the liberal pleading standard afforded *pro se* litigants.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As for general jurisdiction, Plaintiff makes no allegation that the defendants who have moved to dismiss for lack of personal jurisdiction should be "fairly regarded as at home" in the District of Columbia.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  These defendants, moreover, expressly deny that notion, *see* Dkt. 17 at 10, 12; Dkt. 12 at 14–15, and for good reason—Miami-Dade County and the Florida Office of Criminal Conflict are (self-evidently) "at home" in Florida, and Plaintiff has nowhere alleged that any of the individuals—Mayor Levine Cava, Governor DeSantis, Judge Milian, or Mr. D'Escoubet—are

domiciled in the District of Columbia, *see Goodyear Dulop Tires Operations, S.A.*, 564 U.S. at 924.

As for specific jurisdiction, the amended complaint makes clear that, to the extent these defendants have engaged in any conduct in the District of Columbia, those activities "lack[] any connection to the plaintiff['s] claims." *Ford Motor Co.*, 141 S. Ct. at 1031.  The amended complaint locates each of the acts relevant to these defendants in Florida, including Dimitri Patterson's arrest, Dkt. 6 at 60 (Am. Compl. ¶ 571); his prosecution (over which Judge Milian appears to have presided), *id.* at 13–16 (Am. Compl. ¶¶ 86–113); *id.* at 47, 49–50 (Am. Compl. ¶¶ 438–46, 463–73); *id.* at 55–59 (Am. Compl. ¶¶ 525–64); his detention at a correctional center in Miami, Dkt. 6 at 4–5, 51–52, 62 (Am. Compl. ¶¶ 15–16, 26–27, 478, 497, 592); and the mayor's and the governor's alleged inaction after they were notified about "a conspiracy" against Dimitri Patterson and about his unlawful detention, *id.* at 17, 62 (Am. Compl. ¶¶ 124–26, 588–89); *id.* at 16–17 (Am. Compl. ¶¶ 115–22).

Plaintiff responds by pointing to 28 U.S.C. §§ 1331 and 1343, which, she claims, "makes this Case a Federal Question," Dkt. 20 at 2; Dkt. 21 at 3, and by arguing that because she has effected service upon these defendants, she has "establish[ed] personal jurisdiction" over them, Dkt. 20 at 2; Dkt. 21 at 3–4.  But the statutes Plaintiff cites speak to subject-matter jurisdiction, rather than personal jurisdiction, and although courts may exercise personal jurisdiction over defendants "based on the fact of *in-state* service of process," *Burnham v. Superior Ct. of Ca.*, 495 U.S. 604, 628 (1990) (emphasis added), Plaintiff nowhere alleges that the defendants who have moved to dismiss for lack of personal jurisdiction were served while physically present in the District of Columbia.  Without the necessary connection to the District of Columbia, the Court may not assert personal jurisdiction over any of these defendants.

The Florida Defendants also challenge this Court's subject-matter jurisdiction based on Plaintiff's standing (or lack thereof) because the complaint alleges, in large part, injuries to her son Dimitri, rather than to her. *See, e.g.*, Dkt. 12 at 18–19. Because the Court has concluded that the complaint as against those defendants must be dismissed for lack of personal jurisdiction, however, the Court need not address standing here. Although "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

The Court will, accordingly, grant the motions to dismiss for lack of personal jurisdiction. Dkt. 12; Dkt. 17.

## B.     The United States

Turning to the Federal Defendants' motion to dismiss, the Court notes in the first instance that it lacks subject matter jurisdiction over Plaintiff's claims against the Department of Justice and against the Federal Defendants, to the extent Plaintiffs sues them in their official capacity, because those claims are barred by sovereign immunity. Dkt. 37 at 13–16. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "[S]overeign immunity is jurisdictional in nature," and "[a] party bringing suit against the United States bears the burden of proving that the government has unequivocally waved its immunity." *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *see also Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006). Actions against federal officials in their official capacity, moreover, "are treated as suits against their employer," *i.e.*, as suits against the United States. *Bond v. U.S. Dep't of Just.*, 828 F. Supp. 2d 60, 74 (D.D.C. 2011); *see also Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984).

No waiver of sovereign immunity allows Plaintiff's claims against the United States to proceed.  "Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution."  *Bond*, 828 F. Supp. 2d at 74 (quoting *Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 9 (D.D.C. 2009)); *see also Meyer*, 510 U.S. at 478 ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims.").  Although *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) established a private cause of action for damages against federal officers sued in their individual capacity, who commit certain constitutional violations, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), that cause of action does not extend to federal agencies like the Department of Justice or to federal officials sued in their official capacity, *see Meyer*, 510 U.S. at 486 (declining to extend *Bivens* to federal agencies), and, in any event, Congress has not waived the sovereign immunity of the United States for *Bivens* or similar-type claims against federal agencies or federal officials sued in their officials capacities, *see In re Rodriguez*, No. 05-5130, 2005 WL 3843612, at *3 (D.C. Cir. Oct. 14, 2005) (per curiam) (explaining that Congress has not waived the United States's sovereign immunity for claims under 42 U.S.C. §§ 1985(3) and 1986); *see also Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017).

Finally, Plaintiff's complaint, which asserts "negligent infliction of emotional distress" against at least some defendants, *see, e.g.*, Dkt. 6 at 29 (Am. Compl. ¶ 247), might also be plausibly read to assert a violation of the Federal Tort Claims Act ("FTCA").  "The FTCA represents a limited waiver of the government's sovereign immunity, grant[ing] the federal district courts jurisdiction over a certain category of claims for which the United States has . . . render[ed] itself liable."  *Tri-State Hosp. Supply Corp.*, 341 F.3d at 575 (quoting *Meyer*, 510 U.S. at 477) (internal quotation marks omitted) (alterations in original).  Under the FTCA,

however, a plaintiff must "have exhausted his administrative remedy before filing suit," *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010), by filing a "written statement sufficiently describing the injury to enable the agency to begin its own investigation" and by "hav[ing] [her] claim finally denied by DOJ in writing," *Patterson v. Harris*, No. 19-cv-897, 2019 WL 4988071, at *5 (D.D.C. Oct. 8, 2019) (quoting *Hoffman v. Dist. of Columbia*, 643 F. Supp. 2d 132 (D.D.C. 2009)).  Absent any allegation that Plaintiff "has taken any such steps," the Court must "dismiss[] [any FTCA claims] for lack of jurisdiction." *Patterson*, 2019 WL 4988071, at *5 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

The Court will, accordingly, dismiss under Federal Rule of Civil Procedure 12(b)(1) any claims for money damages against the Department of Justice or against individual Federal Defendants sued in their official capacities.

## C.    Judicial Defendants

### 1.    *Clerk of the Supreme Court*

As for Plaintiff's request for injunctive relief against the Clerk of the Supreme Court, "neither a district court nor a circuit court of appeals has jurisdiction to interfere with" the Supreme Court's "supervisory authority" over the Clerk.  *In re Marin*, 956 F.2d 339, 340 (D.C. Cir. 1992) (per curiam); *see also Panko v. Rodak*, 606 F.2d 168, 171 n.6 (7th Cir. 1979) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action.").  This principle bars injunctive relief against the Clerk of the Supreme Court.  *See Gillenwater v. Harris*, No. 16-cv-495, 2016 WL 8285811, at *2 (D.D.C. Apr. 12, 2016). Moreover, for the reasons just discussed, the Court lacks jurisdiction over any claim for damages brought against the Clerk of the Supreme Court in his official capacity.

To the extent Plaintiff asserts a claim for damages against the Clerk of the Supreme Court in his individual capacity, the doctrine of judicial immunity confers absolute immunity on judicial officers against such claims and "extends to court clerks who perform tasks that are an integral part of the judicial process."[1] *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (quotation marks omitted); *see also Sindram v. Suda*, 986 F.2d 1459, 1460–61 (D.C. Cir. 1993) (per curiam).  A plaintiff cannot assert a claim against a clerk without identifying an act "taken by the clerk[] outside of the performance of tasks within the judicial process." *Sibley*, 786 F. Supp. 2d at 344.  Tasks that clearly fall within the ambit of the judicial process include the "receipt and processing" of filings. *Id.*  Because these are exactly the kinds of tasks on which Plaintiff predicates her damages claims against the Clerk, judicial immunity bars recovery here.

### 2.  *Chief Judge Howell and Angela D. Caesar*

Plaintiff's claims against Chief Judge Howell and the Clerk of the District Court for the District of Columbia fare no better.  As Defendants highlight, it is unclear whether Chief Judge Howell or the Clerk of this Court have been served in accordance with Federal Rule of Civil Procedure 4(i)(3), which directs that, to serve a United States officer or employee in an individual capacity, "a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)."  Fed. R. Civ. P. 4(i)(3).  The Court, however, "has discretion to 'proceed to evaluate the merits' for a 12(b)(6) determination" even where service is (arguably) insufficient.  *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 194–95 (D.D.C. 2015)

---

[1] Unlike with sovereign immunity, judicial immunity is a "non-jurisdictional ground[]" for dismissal.  *Croley v. Joint Comm'n on Jud. Admin.*, 895 F.3d 22, 32 (D.C. Cir. 2018); *see also, e.g.*, *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), *aff'd*, No. 14-5180, 2015 WL 13710107  (D.C. Cir. Jan. 14, 2015) (explaining that sovereign immunity and judicial immunity "have different bases under the federal rule" and that the latter is "subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted" (quoting *Tsitrin v. Lettow*, 888 F. Supp. 2d 88, 91 (D.D.C. 2012))).

(quoting *Simpkins v. Dist. of Columbia*, 108 F.3d 366, 369-80 (D.C. Cir. 1997)).  Where, as here, allowing Plaintiff a second chance would merely "delay[] the inevitable," *Simpkins*, 108 F.3d at 370, dismissal under Rule 12(b)(6) is appropriate.

Plaintiff alleges that Angela Caesar, the Clerk of this Court, "has refused to file and Docket . . . Motions for Clerk's Entry of Default" that were filed in *Patterson v. Fla. Dep't of Child. & Fams.*, No. 21-cv-1427 and that she "intentionally subverted the Random Case Assignment process[] for the sole purpose of funneling the Plaintiff's filings to a Judge who has already rendered abusive and malicious decisions relating to the same issues."  Dkt. 6 at 19 (Am. Compl. ¶¶ 146, 149).  And she alleges that Chief Judge Howell conspired with Caesar to "impede and obstruct the just, speedy, and inexpensive determination of civil suits filed by the Plaintiff" by "refus[ing] to correct the conduct of Caesar" and "tactically authoriz[ing] Caesar by way of deliberate indifference to obstruct the Pleadings filed by the Plaintiff."  *Id.* at 17–18 (Am. Compl. ¶¶ 129, 135, 137).

Plaintiff's claims for money damages against Chief Judge Howell and the Clerk of this Court are barred by the doctrine of judicial immunity, which extends to "all actions taken in the judge's judicial capacity, unless the[] actions are taken in the complete absence of all jurisdiction" and bars damages suits against "[c]lerks . . . for performance of tasks that are an integral part of the judicial process."  *Sindram*, 986 F.2d at 1460; *see also Mireles v. Waco*, 502 U.S. 9, 9 (1991) (describing a long line of Supreme Court precedents that have found "judge[s] . . . immune from . . . suit for money damages"); *see also Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006) ("It is well established that judicial immunity extends to other officers of government whose duties are related to the judicial process." (internal quotation marks omitted)); *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 19 (D.D.C. 2014).  To determine whether a judge was

acting in her judicial capacity, courts consider the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

The actions that Chief Judge Howell and the Clerk of this Court allegedly took, including the decisions not to docket pleadings and the assignment of cases, are clearly "related to the judicial process." *Roth*, 449 F.3d at 1287. "[A] clerk's receipt and processing of plaintiff's attempted filings are part and parcel of the process of adjudicating cases." *Fuller v. Harris*, 258 F. Supp. 3d 204, 207 (D.D.C. 2017) (quotation marks omitted) (quoting *Reddy v. O'Connor*, 520 F. Supp. 2d 124, 130 (D.D.C. 2007)). And "[a] judge's decision to file . . . a party's motions or requests is an action routinely performed by a judge in the course of litigation, and thus would constitute a judicial act immune from suit." *Thomas*, 61 F. Supp. 3d at 19; *see also Sibley*, 786 F. Supp. 2d at 344. Plaintiff's claims for money damages against Chief Judge Howell and the Clerk of this Court, then, are barred by judicial immunity.

Nor has Plaintiff stated a claim for injunctive relief. In the first instance, a single judge of this Court does not have authority to "compel . . . other Article III judges in this or other districts or circuits to act." *Sibley*, 786 F. Supp. 2d at 345; *see also Thomas*, 61 F. Supp. 3d at 20; *Patterson*, 2019 WL 4988071, at *3–4. Plaintiff's claim for injunctive relief against the Clerk, moreover, is now moot, as the motion for entry of default against the Florida Department of Children and Families at issue here has since been docketed. *See* Motion for Entry of Default, *Patterson*, 2021 WL 6196991, ECF No. 52.[2]

---

[2] To the extent that Plaintiff seeks injunctive relief to address the allegedly improper assignment of her case to the undersigned, that claim also fails. The Court directs Plaintiff to this Court's

### D.    Federal Executive Defendants

As to Presidents Biden and Trump and the current and former DOJ officials, Plaintiff asserts violations of the Fifth and Ninth Amendments to the United States Constitution, 42 U.S.C. § 1986, and negligent infliction of emotional distress—although the last of these she pleads only against one former DOJ official.  These claims all stem from the Department of Justice's alleged failure to "thoroughly investigate[] [and act on] the details in [Plaintiff's] [c]ivil [r]ights [c]omplaint," *see, e.g.*, Dkt. 6 at 37 (Am. Compl. ¶ 332), and from the Presidents' failure to direct a Department of Justice investigation into the prosecution of Plaintiff's son, *see* Dkt. 6 at 8–10 (Compl. ¶¶ 53–55, 74–75).  The Federal Executive Defendants argue that these claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff's "entire amended complaint arises out of her son's criminal prosecution in Florida" and because she "cites no facts that demonstrate an actual injury to [Plaintiff] that can be traced to the conduct of the Federal Defendants."  Dkt. 37 at 21–22.

To establish standing to bring a particular claim, "a plaintiff must have suffered an (1) 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,' (2) which is 'fairly traceable' to the challenged act, and (3) 'likely' to be 'redressed by a favorable decision.'" *Common Cause v. Fed. Election Comm'n*, 108 F.3d 413, 416 (D.C. Cir. 1997) (quoting *Lujan*, 504 U.S. at 560–61).  "[D]efect[s] of standing" constitute "defect[s] in subject matter jurisdiction," *Haase*, 835 F.2d at 906, and the "plaintiff bears the burden of . . . establishing the elements of standing" with the "manner and degree of evidence required at the successive stages

---

local rules, which dictate that "a case filed by a *pro se* litigant with a prior case pending shall be deemed related and assigned to the judge having the earliest case."  L. Civ. R. 40.5(a)(3).

of the litigation." *Arpaio*, 797 F.3d at 19 (quoting *Lujan*, 504 U.S. at 561).  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of standing] that is plausible on its face." *Id.* (alterations in original) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).  Here, even if Plaintiff has plausibly alleged an injury resulting from her son's incarceration, she has failed to establish a causal link between this injury and the challenged conduct—that is, the Federal Defendants' failure to investigate this alleged conspiracy—or that an injunction would likely redress her alleged injury.

As the Supreme Court explained in *Allen v. Wright*, 468 U.S. 737 (1984), an "attenuated" "line of causation" between government conduct and an alleged injury—where, for example, the "links in the chain of causation" involve "numerous third parties" making "independent decisions" that "may not collectively have [had] a significant effect" on the complained-of conduct—is insufficient to establish Article III standing.  468 U.S. at 755–59.  That principle applies here.  The chain of causation linking the Federal Defendants' failure to "thoroughly investigate[] [and to act on] the details in [Plaintiff's] [c]ivil [r]ights [c]omplaint," *see, e.g.*, Dkt. 6 at 37 (Am. Compl. ¶ 332), with the injuries Plaintiff has alleged sustained is "attenuated at best," *Allen*, 468 U.S. at 757.

Neither Plaintiff's complaint nor her response to Defendants' motion to dismiss sets forth the alleged causal connection between the Department of Justice's alleged failure to investigate and her alleged injuries.  Even construing her complaint generously, drawing such a causal chain would require speculating that (1) a DOJ investigation would reveal misconduct by the Florida defendants; (2) the DOJ would decide to exercise its discretion to address such misconduct via prosecution or otherwise; and (3) such an action on the part of the federal government would alleviate Plaintiff's wellbeing and to her personal and professional relationships by, presumably,

leading to her son's release from jail.  At each of these links, that causal chain could easily be broken; to take just one example, Plaintiff fails to allege any facts even suggesting that the Florida officials would release—and have the authority to release—Plaintiff's son from state custody in response to a DOJ investigation or other inquiry.  The extent of speculation inherent in each turn, as well as Plaintiff's "reliance on the anticipated action[s] of unrelated third parties makes it considerably harder to show the causation required to support standing."  *Abulhawa v. U.S. Dep't of Treasury*, 239 F. Supp. 3d 24, 34 (D.D.C. 2017) (alteration in original) (quoting *Arpaio*, 797 F.3d at 20).  The Court, accordingly, concludes that Plaintiff has failed to carry her "burden of . . . establishing the [causation] element[] of standing" and that her claim for injunctive relief accordingly fails.  *Arpaio*, 797 F.3d at 19.

Nor does the amended complaint contain allegations sufficient to satisfy the redressability requirement.  "Redressability examines whether the relief sought, assuming that the court chooses to grant it, w[ould] likely alleviate the particularized injury alleged by the plaintiff."  *West v. Lynch*, 845 F.3d 1228,1235 (D.C. Cir. 2017) (quoting *Fla. Audobon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc))).  "The key word is 'likely,'" *id.* (quoting *Lujan*, 504 U.S. at 561), and thus "the prospect of obtaining relief from the injury as a result of a favorable ruling" cannot be "too speculative," *Allen*, 468 U.S. at 752.  For the reasons explained above, the likelihood that an injunction "ordering the DOJ [or its officials] to investigate and intervene on behalf of the Plaintiff," Dkt. 6 at 69 (Am. Compl. ¶¶ 668–69)—if the Court could even order such a result—would address Plaintiff's distress is both speculative and remote.  It requires the Court to "pile conjecture on conjecture," *West*, 845 F.3d at 1237, forcing it to assume without aid from Plaintiff that a federal investigation would likely lead to Dimitri Patterson's release and that his release would alleviate the ongoing injuries to Plaintiff.

Even accepting the allegations contained in Plaintiff's amended complaint as true, she has failed to satisfy the redressability requirement of Article III standing as to her request for injunctive relief.

At a more fundamental level, moreover, the Court lacks authority to redress Plaintiff's alleged injury.  Although her complaint is far from clear, construed liberally, it seeks injunctive relief pursuant to the Administrative Procedures Act ("APA") or issuance of a writ of mandamus.  The APA authorizes the Court to "compel agency action *unlawfully* withheld," 5 U.S.C. § 706(1) (emphasis added), but "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  28 U.S.C. § 1361, moreover, vests federal district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, but limits such relief to "extraordinary circumstances," *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)), where the government official is violating a clear nondiscretionary duty to act, *see Heckler v. Ringer*, 466 U.S. 602, 617 (1984).  These limits on the availability of mandamus relief are jurisdictional, *see Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020), while the limits on an APA action to compel agency action constrain the Court's authority to order an agency to engage in a discretionary investigation.

Plaintiff's complaint fails to allege any mandatory agency action or nondiscretionary duty to act on behalf of the Department of Justice or the remaining Federal Defendants.  *See, e.g.*, *Ning Ye v. Holder*, 624 F. Supp. 2d 121, 123 (D.D.C. 2019); *Whittle v. Moschella*, 756 F. Supp. 589, 597 (D.D.C. 1991).  "The decision whether and when to investigate a particular matter is

quintessentially discretionary," *Gage v. U.S. Att'y Gen.*, No. 22-cv-283, 2022 WL 602451, at *1 (D.D.C. Feb. 28, 2022); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985), and Plaintiff has not indicated any basis from which the Court can conclude that the Department of Justice or its employees owes her a nondiscretionary duty to investigate the allegations in her civil-rights complaint.  Plaintiff merely points to the Fifth Amendment to the Constitution and to 28 C.F.R. § 0.50, a federal regulation that assigns the Assistant Attorney General for the Civil Rights Division the function of "reviewing investigations arising from reports or complaints of public officials or private citizens." *Id.* § 0.50(b).  Neither provision imposes upon the Department of Justice or the Assistant Attorney General any mandatory duty to investigate or to prosecute a specific complaint or allegation of wrongdoing.  Thus, Plaintiff's claims for injunctive relief are not redressable by this Court, even if she had alleged sufficient facts to establish a sufficient causal connection between her injuries and the inaction of the Federal Executive Defendants.

Finally, even if Plaintiff has standing to bring an action for *damages* (as opposed to injunctive relief) against the Federal Executive Defendants in their individual capacities, she fails to allege facts sufficient to sustain those claims.  In the first instance, Plaintiff's claims against Presidents Trump and Biden, which address their failure to direct a DOJ investigation into the prosecution of Plaintiff's son (and President Trump's failure to "direct . . . the SCOTUS Clerk to perform their ministerial duties"), Dkt. 6 at 35 (Am. Compl. ¶ 309), are barred by the doctrine of presidential immunity.  *See Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982).  That doctrine protects the President from "damages liability for acts" that fall "within the 'outer perimeter' of his official responsibility," *id.*, including, presumably, acts such as his communication with the DOJ and the Supreme Court.  *See Klayman v. Obama*, 125 F. Supp. 3d 67, 86 (D.D.C. 2015) (indicating that immunity is not "defeated" even "by an allegation that the president acted

illegally").  And as to the current and former DOJ officials—who allegedly failed to "thoroughly investigate[] [and act on] the details in [Plaintiff's] [c]ivil [r]ights [c]omplaint, *see* Dkt. 6 at 37 (Am. Compl. ¶ 332)—Plaintiff has failed to allege facts sufficient to state a violation of the Fifth or Ninth Amendments to the U.S. Constitution, a claim for negligent infliction of emotional distress, or a violation of 42 U.S.C. § 1986.

    As to her Fifth Amendment claim, Plaintiff alleges that the DOJ officials "arbitrar[il]y and . . . intentional[ly] obstruct[ed] [her] procedural due process when submitting a civil-rights complaint with the DOJ," Dkt. 6 at 25, 27, 36 (Am. Compl. ¶¶ 205, 230, 329), and "violated [her] Fifth Amendment [rights] by the act of deliberate indifference," *id.* at 25, 27, 36 (Am. Compl. ¶¶ 202, 226, 325).  But Plaintiff fails to allege that she "has been deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (explaining that such an allegation is the "first inquiry in every [procedural] due process challenge"); *see also Karam v. Garland*, No. 21-cv-0915, 2022 WL 4598626, at *9 (D.D.C. Sept. 30, 2022) ("To state a due process claim, a plaintiff must plausibly allege that there exists a liberty or property interest of which plaintiff has been deprived, and that the procedures the government provided were constitutionally inadequate." (internal quotation marks omitted)). Nor does Plaintiff identify, in her complaint or her opposition, the procedures that she believes she was entitled to, but did not receive, when she submitted her civil-rights complaint to the DOJ.  *Cf. Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 33 (D.D.C. 2007) (dismissing a Fifth Amendment claim where "Plaintiffs d[id] not identify . . . the liberty or property interest at stake" or "the manner in which [the plaintiff] was deprived of such an

interest").  Absent these threshold allegations, Plaintiff has failed to state a claim under the Fifth Amendment.[3]

Plaintiff's claims that the Federal Executive Defendants have "invaded [her] mental solitude" and thus violate the Ninth Amendment, *see, e.g.*, Dkt. 6 at 41 (Am. Compl. ¶¶ 370–381), fare no better.  Courts in this district have repeatedly concluded that the Ninth Amendment "is a rule of construction, not a substantive basis for a civil rights claim." *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 26 (D.D.C. 2006); *see also Robinson v. Pilgram*, No. 20-cv-2965, 2021 WL 5987016, at *8 (D.D.C. Dec. 17, 2021); *Marshall v. Reno*, 915 F. Supp. 426, 428 (D.D.C. 1996) (rejecting a Ninth Amendment *Bivens* claim because "the Ninth Amendment does not set forth any particular guarantees, but is merely a rule of construction"); *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 30 (D.D.C. 1998) (explaining that a plaintiff cannot "independently assert[] a cause of action under the Ninth Amendment").  Even if the Ninth Amendment might be read to affirm the existence of certain "other[]" substantive rights "retained by the people," U.S. Const. amend. IX, Patterson offers no basis to conclude that the right to "mental solitude," Dkt. 6 at 41 (Am. Compl. ¶ 380), is among the rights "retained by the people." *Cf. Griswold v. Connecticut*, 381 U.S. 479, 490 (1965) (Goldberg, J., concurring) (observing that statements made by "[James] Madison and [Joseph] Story make clear that the Framers did not intend that the first eight amendments be construed to exhaust the basic and fundamental rights which the Constitution guaranteed to the people").  The Court, accordingly, concludes that Patterson has failed to state a

---

[3] Plaintiff's complaint also states that "[t]he Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws," Dkt. 6 at 37 (Am. Compl. ¶ 334), but she does not appear to include an equal-protection claim in her complaint.  In any event, such a claim would fail because Plaintiff has not alleged that Defendants acted "with discriminatory purpose" in denying her civil-rights complaint. *Richards v. Gelsomino*, 240 F. Supp. 3d 173, 181 (D.D.C. 2017) (quoting *Iqbal*, 556 U.S. at 676).

claim under the Ninth Amendment to the Constitution.  *Cf. Robinson v. Pilgram*, No. 20-cv-2965, 2021 WL 5987016, at *8 (D.D.C. Dec. 17, 2021); *see also Liu v. Georgetown Univ.*, 22-cv-157, 2022 WL 2452611, at *10 (D.D.C. July 6, 2022).

Nor has Plaintiff stated a claim of negligent infliction of emotional distress against former Acting Assistant Attorney General John Gore.  To make out a claim of negligent infliction of emotional distress under D.C. law, a plaintiff must allege facts showing that "(1) [she] was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for h[er] own safety, and (4) the emotional distressed so caused was serious and verifiable."  *Harris v. U.S. Dep't of Veterans Aff's*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *Rice v. Dist. of Columbia*, 774 F. Supp. 2d 26, 33 (D.D.C. 2011)).  The distress caused "must have manifested in an external condition or physical symptoms."  *Rice*, 774 F. Supp. 2d at 33.  Plaintiff has failed altogether to allege these elements: her amended complaint contains no indication that Gore's "refus[al] to investigate, intervene, and prosecute," Dkt. 6 at 29 (Am. Compl. ¶ 247), led Plaintiff to be "physically endangered by [Gore's allegedly] negligent activity," *Destefano v. Child.'s Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015) (internal quotation marks omitted), or that she suffered distress manifesting in physical symptoms.  *See id.* at 29 (Am. Compl. ¶ 251) (describing her injuries as "internal emotional distress, anguish, substantial damage to her wellbeing, and devastating damage to her family, personal, community, civic, and business relationships"); *cf. Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 107–08 (D.D.C. 2018) (dismissing a claim for negligent infliction of emotional distress where the plaintiffs made "vague allegations about the[ir] fear" and did not state "serious, physical manifestations of emotional distress").  And, even more importantly, she fails to identify any duty that the government owed her to conduct an investigation of any kind.

Finally, Plaintiff's claim that current and former DOJ officials violated 42 U.S.C. § 1986 when they were "made aware of a 42 U.S.C. [§] 1985(3) conspiracy" and "willfully turned a blind eye" to that conspiracy, *see* Dkt. 6 at 28, 38, 43 (Am. Compl. ¶¶ 236, 348, 394), also fails. "Generally, § 1986 holds civilly accountable those who have knowledge of a conspiracy, as delineated in § 1985, and failed to prevent such wrongdoing." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007). But "[t]he language of this provision" also "establishes unambiguously that a colorable claim under § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under § 1986." *Id.* (quoting *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72 (D.D.C. 1988)). In other words, a § 1986 claim will fail unless the complaint first alleges in a non-conclusory fashion "an agreement between two or more persons . . . to participate in an unlawful act" and "an injury caused by an unlawful overt act performed by one of the parties to the agreement . . . in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Where, as here, a complaint makes no more than "conclusory allegations of an agreement" without alleging "the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds,'" the § 1985 and § 1986 claims must fail. *McCreary v. Heath*, No. 04-cv-0623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005); *see also Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education but did put forth "any facts showing the existence or establishment of an agreement"); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 56 (D.D.C. 2008) (dismissing a § 1985 claim where plaintiff "fails to provide any facts consistent with his allegations" of a "far-flung conspiracy of wildly disconnected events"); *see also Burnett*, 511 F. Supp. 2d at 145 (explaining that where "the complaint fails to state a claim under § 1985,

plaintiff cannot maintain a claim under § 1986").  Because Plaintiff states only that various Florida officials and agencies "conspired . . . to deprive the Plaintiff of her right to privacy," *see, e.g.*, Dkt. 6 at 47, 57 (Am. Compl. ¶¶ 439, 536), without alleging any facts to support the existence of an agreement between those officials, she has failed to allege a conspiracy under § 1985.  Her § 1986 claim therefore necessarily fails.

The Court will, accordingly, dismiss Plaintiff's claims for damages and injunctive relief against the Federal Executive Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, Dkt. 12; Dkt. 17; Dkt. 35, are hereby **GRANTED**.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 20, 2023